# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE DAWN,

    Plaintiff,

    v.

MARK CIAVARELLA, et al.,

    Defendants,

CIVIL ACTION NO. 3:10-CV-0797

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are the Motions to Dismiss of Defendants Mark A. Ciavarella, Jr., Michael T. Conahan, Sandra Brulo, and Luzerne County Juvenile Probation Department ("Juvenile Probation"). For the reasons discussed more fully below, the motions of Defendants Brulo and Juvenile Probation will be granted, and the motions of Defendants Ciavarella and Conahan will be granted in part and denied in part.

## BACKGROUND

The facts alleged in the Complaint are as follows. Defendants Ciavarella and Conahan were judges on the Court of Common Pleas for Luzerne County; Conahan served as President Judge from January 2002 until 2007, and Ciavarella served as President Judge from June 2007 to January 2009. (Compl. ¶¶ 39, 42, 44.) In 2000, Conahan and Ciavarella entered into an agreement with Defendants Robert Powell, a local attorney, and Robert K. Mericle, the owner of a local construction company, to build a new, privately owned juvenile detention center in Luzerne County as a replacement for the adequate, publicly owned juvenile detention center already in existence. (Compl. ¶¶ 45-48, 51-52.) In order for this new facility to be financially viable, it would require a regular stream of juvenile defendants; as a result, Conahan and Ciavrella aimed to divert large numbers of juveniles into the new

facility in order to gain "kickbacks." (Compl. ¶ 49, 53.)

Between June 2002 and January 1, 2007, Conahan and Ciavarella received over $2.6 million ($2,600,000.00) in covert income in exchange for their cooperation in the scheme to build and fill the new juvenile detention center. (Compl. ¶ 71.) In order to hide these ill-gotten proceeds, Conahan and Ciavarella transferred the money via wire transfer to various corporations controlled by them. (Compl. ¶¶ 57-68.) Their cooperation included removing all funding from the publicly run detention center, having juveniles moved to the new privately-owned facilities built and operated by Defendants Mericle and Powell, agreeing to guarantee placement of juvenile defendants in the new facilities, ordering juveniles to be placed at the private facilities, and assisting the new juvenile detention centers in securing "agreements worth tens of millions of dollars with Luzerne County for the placement of juvenile offenders." (Comp. ¶ 72.)

Conahan and Ciavarella used their role as judges to adopt procedures that allowed large numbers of juveniles to be sent to the newly constructed facilities and did not disclose their conflict of interest to the juveniles who appeared before them. (Compl. ¶ 99.) Plaintiff Wayne Dawn appeared before Ciavarella in 2003; at the proceedings he was denied his right counsel and due process, resulting in a violation of his civil rights. (Compl. ¶¶ 101-104.) In 2005, Plaintiff again appeared before Ciavarella, following an allegation that he had stolen a car; he was denied access to counsel and coerced into pleading guilty. (Comp. ¶¶ 106-108.) Plaintiff claims that he was incarcerated, and as a result he suffered deprivation of personal liberty, loss of positive sense of well-being, emotional trauma, collateral consequences in his personal and family life, and the detrimental effects of the stigma place on him by his time spent in detention. (Compl. ¶ 110.)

2

On April 14, 2010, Plaintiff filed the instant Complaint. (Doc. 1.) Plaintiff brings causes of action for violation of Racketeering Influence and Corrupt Organizations Act (RICO) (Count I), conspiracy to violate RICO (Count II), and violations for 42 U.S.C. § 1983 for deprivations of Plaintiff's Fifth, Sixth, and Fourteen Amendment rights. On May 14, 2010, Defendants Conahan, Ciavarella, and Juvenile Probation filed motions to dismiss Plaintiff's Complaint in its entirety. (Doc. 7, 9, 11.) On May 20, 2010, Defendant Brulo also filed a motion to dismiss Plaintiff's Complaint. (Doc. 18.) These motions have been fully briefed and are currently ripe for disposition.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type

3

of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## **DISCUSSION**

**I.     Counts I and II**

In order to have standing to bring a RICO claim pursuant to 18 U.S.C. § 1962(c), as

Plaintiff does here, Plaintiff must plead injury to his business or property and that Defendants proximately caused such injury. *Pappa v. Unum Life Ins. Co. of America*, No. 3:07-cv-0708, 2008 WL 744820, at *8 (M.D. Pa. March 18, 2008). A injury "by nature of mental distress" is not sufficient to claim damage to business or property. *Id.* (citing *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1169 (3d Cir. 1987)). The phrase "business or property" has been held by the Supreme Court, in construing the Clayton Act, to exclude personal injury. *Id.* (citing *Reiter v. Sonotone*, 442 U.S. 330, 339 (1979)). Mental distress, emotional distress, and harmed reputations do not constitute injury to business or property sufficient to confer standing on a RICO plaintiff. *Id.* at *8-9; *Zimmerman*, 834 F.2d at 1169. Furthermore, injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest. *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (citing *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)).

In the instant case, Plaintiff has not alleged sufficient injury to business or property to confer standing to bring a claim pursuant to RICO. Plaintiff's claims for loss of sense of well-being, emotional trauma and stigma are not the type of concrete financial loss that is envisioned by the phrase "injury to business or property." Having failed to plead injury to business or property, Plaintiff has not pled a key requirement to have standing to bring a RICO claim. Thus, moving Defendants' motions will all be granted as to Counts I and II.

**II.     Count III**

    **A.     Conahan**

Defendant Conahan moves to dismiss Count III, claiming that he cannot be sued due to absolute judicial immunity in his role as judge and absolute legislative immunity for his role

as a budget-maker while acting as President Judge. This Court shall address each of these arguments below.

### 1. Judicial Immunity

This Court has previously had the opportunity to examine the doctrine of absolute judicial immunity in a very similar factual scenario in *Wallace v. Powell*, No. 3:09-cv-286, 2009 WL 4051974, at *3-4 (M.D. Pa. Nov. 20, 2009). That case was brought by a class of plaintiffs and a group of individual plaintiffs, alleging that Conahan and Ciavarella had denied them their Constitutional rights as part of the scheme to divert juvenile defendants to the newly constructed facilities in return for kickbacks. *Id.* at *1-2. Defendants Conahan and Ciavarella moved to dismiss based on absolute judicial immunity. *Id.* at *1.

For judicial immunity to apply, only two requirements must be met: 1) jurisdiction over the dispute, and 2) a judicial act. *Id.* at *7. As to the first, a judge is not immune only when he has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349 (1978) (citation omitted). As to the second prong, judicial immunity extends only to "judicial acts," not administrative, executive, or legislative ones. *Id*. at 360-61.

"[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump*, 435 U.S. at 356 (citation omitted). The fact that the judge was incorrect about the status of jurisdiction or that there were procedural errors causing the judge to act without jurisdiction does not satisfy the requirements for defeating immunity. *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 771 (3d Cir.2000).

In determining whether an act is judicial, "it is appropriate to consider 'the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge,' and 'the

expectations of the parties, *i.e.*, whether they dealt with the judge in his official capacity.'" *Wallace*, 2009 WL 4051974, at *7 (quoting *Stump*, 435 U.S. at 362). "Acts which are traditionally done by judges include issuing orders, resolving cases and controversies, making rulings, and sentencing criminal defendants. Other actions such as sending a fax, or hiring and firing subordinates, have been found to be administrative, rather than judicial, acts. Note, however, that even if an act is not judicial, there may be still be immunity if the act is legislative or executive in nature." *Id.*

In *Wallace*, this Court held that the allegations that Conahan and Ciavarella did not act as impartial judges, failed to advise juveniles of their right to counsel, and failed to determine whether guilty pleas were knowing and voluntary, while "egregious, unjustifiable judicial behavior," did not "make out a case for the absence of jurisdiction." *Wallace*, 2009 WL 4051974, at *7. Thus, as to their courtroom behavior, both Conahan and Ciavarella were held to have jurisdiction.

In this case, Plaintiff alleges that Conahan ordered various juveniles to be placed in the new juvenile facilities as part of a scheme to ensure that the facilities were lucrative. As to this type of courtroom behavior, Conahan clearly had jurisdiction.

However, many of the actions taken by Conahan were not of a judicial nature. To the extent that Plaintiff makes allegations regarding Conahan's disposition of other juvenile cases before him in his role as judge, those are judicial acts and Conahan has immunity. However, the vast majority of activity alleged against Conahan was taken outside his role as judicial officer. The agreements entered into by Conahan with Mericle and Powell, any budget decisions make by Conahan as President Judge, or any of advocacy for building a new detention center are non-judicial acts that are not subject to absolute judicial immunity.

*See Wallace*, 2009 WL 4051974, at *8 (delineating judicial and non-judicial acts taken by Conahan). Therefore, Conahan's motion to dismiss is granted regarding any actions he took in delinquency determinations of other minors in furtherance of the conspiracy and other judicial acts. However, the remaining claims against Conahan fall outside of the realm of judicial acts and he cannot be shielded by judicial immunity for these actions. The motion will be denied as to these actions.

### 2. Legislative Immunity

Conahan also argues that he is subject to legislative immunity for any of the budget making decisions he made in his role as President Judge. This Court was presented with a similar argument by Conahan in *Wallace* and held:

> There appears to be no legal basis for the argument that the president judge has the legislative power to control and administer even a portion of the county budget. As the Plaintiffs argue in their brief in opposition, "Pennsylvania law does not vest a president judge with the power to create, vote on, or sign into law a county budget." (Doc. 282 at 67.) The cases which address the interaction between the president judge and the county commissioners instead suggest that the president judge makes budget recommendations to the commissioners, but that the commissioners must make the final spending allocations. *See, e.g., Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (Pa.1992) (president judge seeking to compel commissioners to disperse funds); *Becket v. Warren*, 497 Pa. 137, 439 A.2d 638 (Pa.1981) (same). This type of political lobbying is distinct from legislative activity. Because Conahan's activity with respect to the Luzerne County budget was not legislative in nature, I find that absolute legislative immunity does not apply.

*Wallace*, 2009 WL 4051974, at *11.

The reasoning in *Wallace* applies with equal force to the instant case. It does not appear that Conahan had the type of general policy-making power that would cloak his actions with legislative immunity. As such, Conahan's motion will be denied with regard to his legislative immunity arguments.

8

### B. Ciavarella

Defendant Ciavarella also argues that he should be protected from Plaintiff's allegations by absolute judicial immunity. In this case, Ciavarella acted with jurisdiction as he was the judge that presided over Plaintiff's juvenile case. Regarding the judicial acts prong, some of Ciavarella's alleged actions are covered by judicial immunity, while others are not. Ciavarella's court room actions in sentencing juveniles, including his sentencing of Plaintiff, are precisely the type of judicial act that is protected by the doctrine of judicial immunity. As for to the other allegations, such as Ciavarella's role in the conspiracy to build the juvenile detention centers and receive kickbacks, those allegations are extra-judicial activity that is not protected by absolute judicial immunity. Therefore, Ciavarella's motion will be granted in part and denied in part. It will be granted for all judicial acts, including the dispositions of juvenile proceedings and Ciavarella's handling of Plaintiff's juvenile matters and denied as to all other allegations.

### C. Juvenile Probation

The Eleventh Amendment to the United States Constitution states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "The Eleventh Amendment renders unconsenting States immune from suits brought in federal courts by private parties." *Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 197 (3d Cir. 2008) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). In *Haybarger*, the Third Circuit Court of Appeals noted that:

> We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity. *Benn*, 426 F.3d at 241. The Commonwealth vests judicial power in a unified judicial system, Pa. Const. art. V, § 1, and all courts and agencies of the UJS are part of the Commonwealth government rather than local entities. *Benn*, 426 F.3d at 240. As an arm of the State, an individual judicial district *and its probation and parole department are entitled to Eleventh Amendment immunity*.

*Id.* at 198 (emphasis added).

The Court of Appeals went on to warn that "Eleventh Amendment immunity is not absolute;" for instance, states and their subunits can waive immunity by consenting to suit, or may waive immunity as a condition for receiving federal funds. *Id.*

Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity. *See* 42 PA. CONS. STAT. ANN. § 8521(b) (2004). Furthermore, the Supreme Court has held that Congress did not intend to overturn the Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 342-43 (1979).

Plaintiff argues that it is inappropriate for this Court to make decisions regarding Eleventh Amendment immunity on a 12(b)(6) motion. This is incorrect. Often, Eleventh Amendment immunity is decided on a motion to dismiss. *See, e.g., Haybarger*, 551 F.3d at 196 (district court granted motion to dismiss certain claims on Eleventh Amendment immunity, but received evidence regarding state's waiver of immunity by receiving Rehabilitation Act funds). Therefore, it is appropriate to dispose of this argument on a 12(b)(6) motion. Because Juvenile Probation is an arm of the state that is immune to suit pursuant to the Eleventh Amendment and Pennsylvania has not waived its immunity to suit, its motion to dismiss will be granted.

**D.     Brulo**

Brulo is only named twice in the entirety of Plaintiff's Complaint. The first mention of Brulo sets out her address and position as deputy director of forensic programs for the

Luzerne County Juvenile Probation Department, and the second states that Brulo resides in this judicial district. (Compl. ¶¶ 12, 23.) Beyond that, there are no specific factual allegations made against Brulo. Instead, there are blanket assertions about what all defendants did collectively, many of them consisting of legal conclusions, such as defendants aiding and abetting each other in this conspiracy. (*See* Compl. ¶ 41.)

Plaintiff's Complaint is littered with the type of bald assertions and legal conclusions warned against by the Supreme Court in *Iqbal* and *Twombly*. Plaintiff has not alleged any actions taken by Brulo specifically and, therefore, has failed to raise a reasonable expectation that discovery will reveal evidence that Brulo violated Plaintiff's rights. Therefore, because Plaintiff has not made sufficient factual allegations against Brulo to satisfy the standards set out in *Iqbal* and *Twombly*, Defendant Brulo's motion to dismiss will be granted.

## CONCLUSION

For the foregoing reasons, the motions to dismiss of Defendants Conahan and Ciavarella will be granted in part and denied in part. Furthermore, the motions to dismiss of Defendants Sandra Brulo and Luzerne County Juvenile Probation Department will be granted. An appropriate order follows.

| | |
|---|---|
| <u>August 9, 2010</u><br>Date | <u>/s/ A. Richard Caputo</u><br>A. Richard Caputo<br>United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE DAWN, | |
| Plaintiff, | CIVIL ACTION NO. 3:10-CV-0797 |
| v. | (JUDGE CAPUTO) |
| MARK CIAVARELLA, et al., | |
| Defendants, | |

## ORDER

**NOW**, this  9th  day of August, 2010, **IT IS HEREBY ORDERED** that:

(1) Defendant Michael T. Conahan's Motion to Dismiss (Doc. 7) is **GRANTED in part and DENIED in part** as follows:

   (a) Defendant Conahan's motion is **GRANTED** as to Counts I and II.

   (b) Defendant Conahan's motion is **GRANTED** as to Count III only for judicial immunity for the courtroom adjudications and sentences imposed. The remainder of Defendant Conahan's motion as to Count III is **DENIED.**

(2) Defendant Mark Ciavarella's Motion to Dismiss (Doc. 9) is **GRANTED in part and DENIED in part** as follows:

   (a) Defendant Ciavarella's motion is **GRANTED** as to Counts I and II.

   (b) Defendant Ciavarella's motion is **GRANTED** as to Count III only for judicial immunity for the courtroom adjudications and sentences imposed. The remainder of Defendant Ciavarella's motion as to Count III is **DENIED.**

(3) Defendant Luzerne County Juvenile Probation Department's Motion to Dismiss (Doc. 11) is **GRANTED.**

(4) Defendant Sandra Brulo's Motion to Dismiss (Doc. 18) is **GRANTED**.

                                                /s/ A. Richard Caputo
                                                A. Richard Caputo
                                                United States District Judge